IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| IRIS YOUNG, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:25-cv-00422 |
| CAROLYN GROSSLEY, et al., | ) ) | JUDGE CAMPBELL |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Iris Young, a Michigan resident proceeding pro se, filed a "Complaint for a Civil Case Alleging Negligence" (Doc. No. 1) against the former director of the Nashville Rescue Mission, Carolyn Grossley. With her Complaint, Plaintiff also filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.) On May 20, 2025, she submitted a one-sentence letter to the Court "asking for a[n] Order of Protection from the Nashville Rescue Mission, staff and family members." (Doc. No. 6.) In that same mailing, Plaintiff submitted a pleading asserting Defendant Grossley's negligence. (Doc. No. 7.) On May 29, 2025, Plaintiff filed an unsigned "Complaint and Request for Injunction" against Grossley and the Nashville Rescue Mission staff (Doc. No. 8), which was docketed as her Amended Complaint.

### I. FILING FEE

Plaintiff's IFP application lists monthly expenses that approach her monthly income from disability benefits. It therefore sufficiently demonstrates that she cannot pay the full civil filing fee in advance "without undue hardship." *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001); *see also*, *e.g.*, *Shannon v. Omni Logistics LLC*, No. EP-23-CV-

384-KC, 2023 WL 8113826, at *1 (W.D. Tex. Nov. 22, 2023) (stating that "IFP status does not require absolute destitution," but should be based on consideration of "whether the movant can afford the costs of proceeding without undue hardship or deprivation of the necessities of life") (citation omitted). Accordingly, the IFP application (Doc. No. 2) is **GRANTED**. 28 U.S.C. § 1915(a).

## II. INITIAL REVIEW

The Court must conduct an initial review and dismiss the Complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the Complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," *Small v. Brock*, 963 F.3d 539, 540 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must also afford the pro se pleading a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

2

Before the viability of her claims may be assessed, Plaintiff must first establish that her case comes within the Court's subject-matter jurisdiction. *See Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010) ("[A]s the party invoking federal jurisdiction, [Plaintiff] bore the burden of satisfying the requirements of federal jurisdiction[.]"). Under 28 U.S.C. §§ 1331 and 1332, federal subject-matter jurisdiction is restricted to (1) cases that present a question of federal law, and (2) cases between parties of diverse citizenship in which more than $75,000 is at stake. *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020). In this case, Plaintiff invokes the Court's diversity jurisdiction under Section 1332. (Doc. No. 1 at PageID # 1, 3; Doc. No. 8 at PageID # 62–63.)

Plaintiff alleges that she is a Michigan citizen, while Defendant Grossley is a Tennessee citizen. But diversity of citizenship is only one half of the jurisdictional analysis; the other half is the amount-in-controversy requirement, which is satisfied only by an amount that "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 252–53 (6th Cir. 2011) (requiring $75,000 and "one penny" to get to jurisdictional minimum). In her original Complaint, Plaintiff merely alleges that Defendant Grossley's negligent "failure to do her job and keep me safe" resulted in "emotional distress" and "moving," leading Plaintiff to request $50,000 in punitive damages. (Doc. No. 1 at PageID # 4.) Even though this amount of "punitive damages may be aggregated with other damages to satisfy the amount-in-controversy requirement," *Charvat*, 630 F.3d at 462 (citing *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572–73 (6th Cir. 2001)), the Court cannot reasonably infer from the barebones Complaint's few allegations that the $25,000.01 difference is

3

made up by Plaintiff's undefined emotional distress and the cost of moving.[1] The original Complaint thus fails to adequately support Plaintiff's assertion of diversity jurisdiction.

In her subsequent pleading under the heading "Negligence," Plaintiff provides the following additional information about her claims and injuries:

> I stayed at the Nashville Rescue Mission, in 2017 Carolyn Grossley was the director, I inform her that I was being stalk[ed], harass[ed], she didn't say anything, I was in and out of the homeless shelter, nothing was said to me about the staff at the Nashville Rescue Mission had it in for me. I star[t]ed tr[a]veling, I notice the staff and the[i]r family members in every state I travel to, and they would let me [know] that they [were] there, to follow me around.
>
> I left the shelter in 2022, after I got sexual[l]y assaulted. I continue to get [sexually assaulted] by this hate group. They have be[en] on every property I have live[d] on.
>
> Due to Ms. Carolyn Grossley['s] negligence, and failure to do her job, this has created [a] bad situation for me. I can't find no[where] to live, they have hack[ed] my phone, from 2017 the staff and the[ir] family members are still stalking, harassing, verb[a]l attacks, [sexual assault], invasion of privacy, my rights were being violated, the police [would] write anything on the police report to make me look crazy. I'm asking for a[n] Order of Protection. If Ms. Grossley had told me in 2017, I could have done something different. I['m] suing for pain and suff[er]ing."

(Doc. No. 7 at PageID # 54–55.)[2] This pleading does not explicitly demand, or describe as at-stake, any amount of money. And even if its allegations and assertion of Plaintiff's pain and suffering could otherwise be deemed sufficient to establish an amount in controversy greater than $75,000, the "Negligence" pleading does not purport to be an amended complaint.

---

[1] The attachments to the Complaint (Doc. No. 1-1) are of no help either. They basically recount Plaintiff's allegation of a sexual assault that occurred in Los Angeles, California on April 20, 2023, while she was sleeping. (*See id.* at PageID # 8.) But when Adult Protective Services investigated the allegation, they were unable to confirm that an assault occurred, as Plaintiff herself was "not certain if the abuse even took place." (*Id.* at PageID # 9.) The investigation concluded on June 5, 2023, after agency personnel made a home visit at which Plaintiff could not confirm whether the incident happened, but only that she "felt unsafe and scared and . . . didn't want to live [at] the facility anymore." (*Id.* at PageID# 19, 27.)

[2] These allegations echo those contained in a cover letter submitted with the Complaint, wherein Plaintiff asserts that the Nashville Rescue Mission staff stalks her wherever she goes: "Cali, Las Vegas, Reno, Detroit. They are on every property I stay on . . . [and have] poison[ed] my food, threat[ened] to have me kill[ed]," and "are friends with police." (Doc. No. 1-2 at PageID # 37.)

Finally, in her most recent filing—which *does* appear intended to supplant the original Complaint—Plaintiff does not seek any monetary relief at all, but only "an emergency order" related to her allegations that Nashville Rescue Mission staff and members of Grossley's family "continue to stalk and harass" Plaintiff in Michigan, where such staff and family members were present in February, April, and May. (Doc. No. 8 at PageID # 63.) Plaintiff claims that, in the absence of an injunctive order, she will have to move because the children of "this hate group" are not in school, are "told to torture [Plaintiff] all day," and are allowed (by police and the property manager) to stay at the house where Plaintiff lives. (*Id.* at PageID # 64.) In a case where only non-monetary relief is sought, the amount in controversy may be ascertained by reference to "'the value of the object of the litigation.'" *Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770 (6th Cir. 2009) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). But in this case, the Court could only speculate as to the value of Plaintiff's attempt to win an "emergency order" for her "safety" from the alleged hate-group members. (Doc. No. 8 at PageID # 64.) Accordingly, the Amended Complaint does not satisfy Plaintiff's burden of pleading that the amount in controversy exceeds $75,000.

For these reasons, the Court finds that it lacks subject-matter jurisdiction over this action. The action must therefore be dismissed. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Alternatively, even if the exercise of diversity jurisdiction were proper, Plaintiff fails to state a nonfrivolous ground for relief. "A suit may be dismissed as frivolous only when the plaintiff fails to present any claim with an arguable or rational basis in law or fact." *Huey v. Raymond*, 53 F. App'x 329, 330 (6th Cir. 2002) (citing, *e.g.*, *Neitzke v. Williams*, 490 U.S. 319, 325, 327–28 (1989)). Claims that are legally frivolous "include claims for which the defendants are clearly

entitled to immunity and claims of infringement of a legal interest which clearly does not exist," while claims that are factually frivolous present "fantastic or delusional scenarios." *Id.* Courts presented with factual allegations that are clearly baseless have the "discretion to refuse to accept without question the truth of [such] allegations." *Id.* at 331 (citing *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

Here, Plaintiff presents a legal and factual scenario that is simply untenable. The gravamen of her pleadings—that after leaving the Nashville Rescue Mission in 2022, she has been pursued across the country by Rescue Mission staff and by members of Defendant Grossley's family, who have tortured her with abusive, harassing, and sexually assaultive behavior wherever she resides, in multiple states—is plainly delusional, factually frivolous, and entirely insufficient as grounds for the claim that Carolyn Grossley negligently failed to keep her safe (*see* Doc. No. 1 at PageID # 4) after Plaintiff complained of stalking and harassment at the Rescue Mission in 2017. (*See* Doc. No. 7 at PageID # 54.) In short, Plaintiff's "fail[ure] to present any claim with an arguable or rational basis in law or fact" justifies dismissal of this action as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). *Huey*, 53 F. App'x at 330.

### III. CONCLUSION

For the above reasons, this case is **DISMISSED** for lack of subject-matter jurisdiction or, alternatively, because it is frivolous. The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE